**THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| THE CENTECH GROUP, INC. | : | |
| Plaintiff, | : | Civil Action No. 19-1752C |
| v. | : | Senior Judge Bruggink |
| UNITED STATES OF AMERICA | : | |
| Defendant. | : | |

**PLAINTIFF'S MOTION TO COMPEL AND FOR PAYMENT OF EXPENSES**

Pursuant to Rule 37(a)(l) of the Rules of the United States Court of Federal Claims ("RCFC"), Plaintiff, THE CENTECH GROUP, Inc. ("CENTECH"), on behalf of Iron Bow Technologies, LLC ("Iron Bow"), respectfully moves this court to compel Defendant to respond to Plaintiff's First Set of Requests for Production of Documents from Defendant ("Request(s)").

Specifically, Plaintiff requests the Court to order Defendant to (1) produce unobjected to documents by a date certain due to Defendant's unfounded contention that the Requests imposed no document production deadline; (2) overrule Defendant's objections to Requests 6 and 7 and require Defendant to produce documents responsive to same; and (3) order Defendant to supplement its production as Defendant's production to date, by its own admission, has been incomplete despite that 65 days have passed since the document discovery deadline.[1] Plaintiff also requests that the Court award its expenses in regard to this motion, including attorneys' fees.

[1] Defendant has not once requested that Plaintiff provide an extension to the October 1, 2020 document production deadline.

## I. PROCEDURAL BACKGROUND

This case involves Defendant's order of certain materials pursuant to its Prime Contract with CENTECH for the installation of cabling and related communication infrastructure materials in Building 7000 at Vandenberg Air Force Base. Defendant expressly approved the bill of materials ("BOM") for these materials, authorized CENTECH to purchase the materials, and the materials were purchased based on that authorization. After the materials were ordered and specially configured and purchased in accordance with the BOM, Defendant suspended the installation of the materials and refused delivery of the same. Defendant then cancelled the order of these materials and refused to make payment.

CENTECH seeks damages for Defendant's refusal to reimburse it for the materials properly ordered with prior contracting officer authorization pursuant to its Prime Contract.

On August 26, 2020, the Court issued its Order permitting the parties to conduct written discovery in connection with seven (7) issues set forth in the Order. (ECF No. 28).[2]

On September 1, 2020, CENTECH served the Requests on Defendant which included nine (9) document requests. **Exhibit 1**.

On October 1, 2020, Defendant served its Responses To Plaintiff's First Set Of Requests For Production ("Responses"). **Exhibit 2**. In its Responses, Defendant agreed to produce documents responsive to Requests 1, 2, 3, 4, 5, 6 (partial), 8, and 9. Defendant, however, refused production, based on relevance and proportionality objections, concerning aspects of Request 6 and Request 7 in its entirety.

[2] The Order requires that the parties file a joint status report on or before December 11, 2020.

Given that Defendant's October 1 Response failed to include any documents, Plaintiff's counsel, James Fontana, emailed Defendant's counsel, Amanda Tantum, on October 2, 2020 stating: "Please provide when you will be making the document production." Defendant's counsel did not respond to this email.

On October 5, 2020, Jeffry Cook, counsel for Iron Bow, called and left a message with Ms. Tantum, requesting a discussion regarding Defendant's failure to produce documents. Defendant's counsel did not return that call. Mr. Cook followed up with an email on October 8, 2020, stating that "I left a voicemail for you earlier this week. I've been wanting to talk with you about your anticipated production schedule and also update you on the Iron Bow/CSC dispute. I can be reached today on my office number or my cell . . . . Please give me a call if you can." Defendant's counsel did not respond to this email.

On October 13, 2020, Mr. Fontana sent another email to Defendant's counsel stating:

> Please note our below email and that you have not returned Jeffry Cook's call regarding the production of documents that you committed to make. The due date for this production was October 1, 2020. We would appreciate an immediate response and production.

No response to this email was received nor did Defendant's counsel respond to Mr. Cook's subsequent call and voicemail left on October 15, 2020.

On October 15, 2020, Plaintiff sent to Defendant a deficiency letter stating, in relevant part:

> I write to bring to your attention a serious deficiency with the Defendant's response to Plaintiff's First Set of Requests for Production ("Document Requests"). Namely, the Defendant has failed to produce ***any*** documents in response to the Document Requests. My partner, Jeffry Cook, and I have collectively sent you at least a half dozen emails or voicemails concerning this issue between October 2, 2020 and the present. Mr. Cook last attempted to call you earlier today. To date, however, no documents or response to our inquiries have been received from you or anyone on behalf of the Defendant. Thus, we are left with little choice but to file a motion to compel unless

> an immediate and meaningful response is made concerning the Defendant's late document production.

**Exhibit 3**. This letter went on to state that "given the total lack of production or communication from counsel for Defendant regarding this issue, we will be forced to bring this deficiency to the Court's attention in the absence of an immediate and meaningful response from your office." *Id.* at 2.

Later that day, Ms. Tantum emailed Mr. Fontana stating that:

> To produce certain of the documents responsive to Centech's requests, we require the entry of a protective order. I have attached a draft protective order, which is a standard form we have used in the past. Please let me know if you will agree to the filing of a joint motion for the entry of this protective order.

This was the first time, over two weeks after production was due, that counsel for Defendant raised the need for a protective order. Although Ms. Tantum subsequently explained that a protective order was necessary because some of the responsive documents contained restrictive legends, this issue should have been but was not raised by Defendant in connection with the parties' Joint Status Report concerning discovery. ECF No. 26.[3]

On October 26, 2020, Defendant produced 26 documents, which was a partial response solely in connection with Request 3.[4] After reviewing Defendant's limited production, it was clear that the production was inadequate in size and scope as only 26 documents were produced while the Request itself concerned the central issue of the IT infrastructure design for Building 7000 over a period spanning at least eight months.

---

[3] Plaintiff did not request a protective order which would apply to its own proprietary information.

[4] Defendant's limited production in response to Request 3 was not a thorough or complete response. Furthermore, Defendant initially produced the documents without any Bates Numbers.

After exchanging several voicemail messages, Mr. Cook was finally able to reach Ms. Tantum by phone on October 30, 2020. During this discussion, Ms. Tantum confirmed that Defendant had additional documents to produce, including with respect Request 3, but repeated that they would only be produced once a protective order was entered by the Court. Ms. Tantum further stated that she expected to be able to produce documents within three or four days of the protective order being entered.

Defendant filed its Joint Motion for Protective Order on October 30, 2020. ECF No. 30. This was **10 days after** Plaintiff agreed to the protective order changes proposed by Defendant, and a full month after the discovery production deadline. On November 5, 2020, Mr. Cook emailed Ms. Tantum that: "With the [protective order] entered, I had been expecting the remainder of the government's production today based on your earlier guidance. Let me know if you are on track to produce today." There was no response from Defendant's counsel.

On November 10, 2020, Plaintiff's counsel sent to Ms. Tantum its ***second*** deficiency letter. **Exhibit 4**. In pertinent part, this letter stated that:

> Defendant was required to produce all responsive documents no later than October 1, 2020. Since that time there have been numerous requests by our office that you produce such documents, to include our letter to you dated October 15, 2020, as well as numerous emails and records of telephone calls from us on this issue both ***before and after*** that date.

*Id.* The letter also challenged Defendant's objections raised in connection with Request 6 and 7.

On November 17, 2020, Defendant responded in writing to Plaintiff's second deficiency letter. **Exhibit 5**. In its letter, Defendant asserted, ***for the first time***, that it was under no obligation to produce documents by any particular date certain because "CENTECH's first set of requests for production did not specify a time for inspection of responsive documents; thus, no [sic] there was no deadline for production of documents." *Id.* The letter further stated, again for the first time, that

Defendant did not know whether all responsive documents had been located and offered only a vague commitment to continue looking.

The letter also reaffirmed Defendant's objection to Request 6, arguing that the labor incurred by the successor contractor to Iron Bow was not relevant to this dispute. Similarly, Defendant reaffirmed its relevance objection to producing any funding or budgetary information concerning the follow-on contractor in response to Request 7.[5]

Counsel for Plaintiff made several additional attempts to resolve the outstanding disputes with counsel for Defendant. Specifically, Defendant was asked, but still would not agree to, a date certain by which all responsive documents would be produced. Defendant was also asked, but would not agree to, producing high level summaries on the labor and budgetary estimates for the successor contractor. Defendant, however, did agree to produce documents related to the BOM used by the successor contractor (Request 3).

Lastly, Defendant made a document production of 138 documents on December 5, 2020. Although Plaintiff is currently reviewing this production, Defendant has not confirmed that this was a complete production of documents nor has defendant withdrawn its statement that there was no date certain for such a full production.

Accordingly, and based on the above-referenced activities and omissions, counsel for Plaintiff certifies that it has attempted to confer in good faith with Defendant in an effort to obtain the requested discovery without Court action. *See* RCFC 37(a)(1).

---

[5] In subsequent communications, Defendant agreed to produce documents responsive to Request 7, but only for the period of time when Iron Bow was on the project, which is inadequate as explained below.

## II. ARGUMENT

### 1. The Court Should Compel Defendant to Produce All Unobjected To Documents by a Date Certain.

RCFC 37(a)(3) and (4) permit a party to move for an order compelling responses to discovery when the recipient of written discovery fails to answer or disclose requested documents or makes an incomplete disclosure. Instead of following this rule in good faith, Defendant has resorted to a "drip drip" approach in providing piecemeal and incomplete production of documents over a 65-plus day period **after** the production deadline. Knowing the that Court had permitted limited discovery since its August 26 Order and pending the parties' status report to be submitted on December 11 regarding, among other things, the need for further discovery, Defendant's flouting the Rules and failure to provide complete discovery of all unobjected to document requests on a timely basis should not be tolerated by this Court.

As stated above, Defendant takes the position that it was under no obligation to produce documents responsive to the Requests on the grounds that the Requests did not specify a "time for inspection." Exhibit 5, p. 2. This obtuse reading of RCFC 34 should be rejected. The Requests here expressly called for "[a] response … no later than thirty days from the date of service on Defendant," which was September 1, 2020. The Requests further stated that ESI should be produced via hard disk via file transfer and non-ESI produced either in hard copy or converted to ESI. Since the Requests clearly requested production of ESI, as opposed to requesting an inspection, the specifying of a "time for inspection" would have been superfluous with the requested response from Defendant within 30 days.

Furthermore, the Rules state that "[t]he production must then be completed no later than the time for inspection specified in the request ***or another reasonable time specified in the response.***" RCFC 37(b)(2)(B) (emphasis added). Thus, even if Defendant is correct that the

Requests should have stated an ESI production deadline in terms of a "time for inspection," the Rule states that the alternative production date is a "reasonable time specified in the response" rather than completely open-ended as Defendant would have it. Not only did Defendant's Responses not specify an alternate date, but Defendant never even raised this issue with counsel until November 17, 2020 – 47 days after the production deadline.

**2. Defendant's Objections to Requests 6 and 7 Are Meritless.**

**A. Defendant Should be Compelled to Produce Documents Responsive to Plaintiff's Request 6.**

Plaintiff's Request 6 sought production of

> All documents and communications concerning Defendant's review and approval of the Phase II labor for the B7000 Activation Project, to include, without limitation, all documents concerning any temporary or permanent cessation or cancellation of the installation of the Phase I BOM Materials at B7000.

Defendant responded as follows:

> Defendant objects to this request for production as non-proportional to the extent that it requests documents or communications related to labor performed or proposals related to labor to be performed – following CENTECH's replacement of Iron Bow with a new subcontractor – by CENTECH, or any subcontractor or other agent of CENTECH other than Iron Bow. As explained in RCFC 26(b)(2)(C), the burden and expense of searching for, gathering, and producing a large number of documents and emails for purposes of responding to this request for production outweighs the likely benefit, particularly considering that this information,
> to the extent it is sought, is not relevant to CENTECH's claim that the Air Force breached its contractual obligations when it did not pay an invoice submitted by CENTECH that related to Iron Bow's ordering of materials from a supplier. CENTECH's request, if any, for this information is, thus, not proportional to the needs of the case.
>
> Defendant also objects to the extent that CENTECH asserts that the Air Force "approv[ed]" "labor" for the B7000 Activation Project prior to CENTECH's replacement of Iron Bow because such an assertion mischaracterizes the facts underlying this case.
>
> Subject to these objections, defendant will produce documents responsive to this request for production related to defendant's review of proposals related to labor to be performed prior to CENTECH's replacement of Iron Bow.

Defendant's objections here coalesced with its objection to Definition No. 7 in Plaintiff's Request:

> DEFINITION NO. 7: "Layer One" shall mean and refer to the subset of B7000 Activation Project efforts relating to the basic networking hardware transmission technologies for B7000, to include all transmission cables, wiring and connectors, necessary for the activation of B7000. The Layer One effort was sometimes referred to by the parties as "Phase I" of the B7000 Activation Project or as the "premise and A/V wiring infrastructure."
>
> OBJECTION: Defendant objects to this definition to the extent that CENTECH includes within it installation efforts undertaken subsequent to CENTECH's replacement of Iron Bow Technologies, LLC (Iron Bow). Information about such installation efforts is of questionable relevance and not proportional to the needs of the case inasmuch as it has no relevance to the issue of whether the Government breached its contractual obligations when it did not pay the invoice submitted by CENTECH.

Defendant essentially objects to production of any matter related to Iron Bow's successor subcontractor on the basis that such documents are not relevant or proportional to the needs of the case.

As a threshold matter, RCFC Rule 26(b)(1) provides that

> parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Under this standard, documents responsive to Request 6 are entirely relevant and in fact critical to determining how the ordering of materials and the installation of those materials at Building 7000 after Iron Bow was replaced as the subcontractor differed from CENTECH's actions when Iron Bow was the subcontractor, to include Defendant's explicit approval of the Iron Bow BOM, CENTECH's subsequent purchase of the BOM Materials through Iron Bow, CENTECH's

efforts to install those materials, Defendant's approval of these actions, as well as Defendant's cancellation of the BOM and later the replacement of Iron Bow by another subcontractor for the same work under a different BOM. Thus, given that the Government's contemporaneous explanation for Iron Bow's removal was its allegedly excessive labor estimate, it is entirely relevant and germane to this case to know what the ultimate labor costs were for this project.

In addition, this Court has previously held that evidence of conduct under other, similar contracts is admissible to prove breach. *See, e.g.*, *Troise v. United States,* 21 Cl. Ct. 48, 61 (1990) ("If the contracts are sufficiently similar, prior contracts between the parties provide valuable insight and evidence as to contract requirements.") (*citing Cresswell v. United States,* 146 Ct. Cl. 119, 127, 173 F. Supp. 805, 811– 12 (1959) (performance of an earlier and identical contract according to defendant's construction of the contract terms was relevant to interpretation of disputed terms)); *Fifth Third Bank of W. Ohio v. United States*, 52 Fed. Cl. 264, 274 (2002) (examining comparable contracts to determine intent in *Winstar* case); *Me. Yankee Atomic Power Co. v. United States*, 225 F.3d 1336, 1342 (Fed. Cir. 2000) (ruling that the government's breach of the standard contract form applied to all utilities that signed it); *Car. Power & Light Co. v. United States*, 573 F.3d 1271, 1273 (Fed. Cir. 2009) (same).

Similarly, here, documents regarding the subcontractor that succeeded Iron Bow is clearly relevant to the issues in this case. Defendant cannot reasonably argue that information related to Iron Bow's subcontract work involving Building 7000 is relevant and proportional while documents related to the successor subcontractors are not discoverable. As such, Defendant should be ordered to respond to Request 6 in so far as it relates to the efforts of the successor contractor's labor.

### B. Defendant Should be Compelled to Produce Documents Responsive to Plaintiff's Request 7.

Plaintiff's Request 7 sought production of

> All documents and communications concerning the Defendant's funds allocated, budgeted or estimated for Phase I and Phase II of the B7000 Activation Project, to include, without limitation, any and all changes thereto and discussions of same.
>
> Defendant responded as follows:
>
> Defendant objects to this request because the information sought is not relevant to CENTECH's claim that the Air Force breached its contractual obligations when it did not pay the invoice submitted by CENTECH related to the Phase I BOM Materials. In addition, the request is not proportional. The request for "[a]ll documents and communications concerning the Defendant's funds allocated, budgeted or estimated" and "any and all changes thereto and discussions of same" is overly broad, given that numerous documents could "concern" in some way to the allocation, budgeting, and estimation of funding and changes to funding. As explained in RCFC 26(b)(2)(C), the burden and expense of gathering this information for purposes of responding to Request for Production No. 7 outweighs the likely benefit, particularly considering that the information sought is not relevant to CENTECH's claim of breach of contract. CENTECH's request for information is, thus, not proportional to the needs of the case.

Subsequently, Defendant agreed to provide documents responsive to this Request but only for the time period when Iron Bow was a subcontractor. The Defendant still objects to producing any such documents after Iron Bow was removed from the project.

The Defendant's funding and budgetary information relative to the work on Building 7000 is relevant to this case because the Government raised an issue with the materials only after it determined that Iron Bow's proposed labor and installation costs were too high. Plaintiff is entitled to discovery on Defendant's budget and funding for this project, especially as it applies to the as installed materials, and that would include those amounts budgeted and funded for any subcontractor. The defenses now raised by Defendant are merely post-hoc rationalizations to obfuscate the Government's regret over purchasing materials before it knew the full cost of the project.

Here, Requests 6 and 7 are related to one part of one CLIN of the Prime Contract -- that involving building materials (i.e., IT network cabling and related materials) for a single three-story

building. It defies logic to conclude that subcontracting funding data for this work would not be relevant, proportional or would overly burden Defendant.

Accordingly, the Court should compel production of the requested documents.

**3. Defendant Must Supplement its Production on All Requests after a Reasonable Search**

Finally, the Court should order Defendant to supplement its production after a reasonable search and review. As it stands now, Defendant has produced only 252 documents. Given the breadth of some of the Requests, this is a facially insufficient number of responsive documents. Plaintiff has knowledge of hundreds of responsive documents sent to or from the Defendant that are nevertheless not included within Defendant's production, but should have been -- to say nothing of responsive internal communications Defendant appears to not have produced. Moreover, it appears that Defendant would not necessarily disagree with this assessment as Defendant **continues to state that it is unable to say whether all responsive documents have been produced or even say when such a determination could be made**. This is plainly unacceptable. As such, Defendant should be ordered to search and produce its records for responsive documents by a date certain, which we would propose to be December 18, 2020.[6]

**4. Defendant Should Pay Plaintiff's Expenses**

Because Defendant had numerous opportunities to resolve these discovery disputes but has failed to do so in a reasonable manner, Plaintiff should be awarded its reasonable costs and attorneys' fees incurred in bringing this motion.

RCFC 37(a)(5)(A) provides, in relevant part, "If the motion is granted . . . the court ***must***, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the

[6] Given Defendant's unreasonable actions in responding to Plaintiff's discovery requests, Plaintiff will request that the Court extend the initial discovery period and scope to include additional discovery requests and depositions.

motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."[7] (Emphasis added). The Rule sets out only three exceptions to this mandate:

> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>
> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
>
> (iii) other circumstances make an award of expenses unjust.

*Id.*

None of these exceptions apply. First, there is no question that Plaintiff, in good faith, attempted to obtain the requested documents before seeking a Court order. In other words, Plaintiff made a "genuine attempt to resolve the discovery dispute through non-judicial means." *Algonquin Heights v. United States,* 2008 U.S. Claims LEXIS 479, at 8-9. Plaintiff made numerous attempts at communications with Defendant "to meaningfully discuss each contested discovery dispute in a genuine effort to avoid judicial intervention." *Id.*, at 9. Indeed, over a 65 day plus period Plaintiff has done plenty to obtain proper discovery responses from Defendant.

Second, there are no circumstances that would make an award of expenses unjust. This requested discovery concerns issues central to the case. Even assuming, arguendo, that Defendant's objections to Requests 6 and 7 are valid, it does not excuse Defendant's anemic and

---

[7] For the purposes of this Rule, Defendant is treated the same as any other litigant. *See M.A. Mortenson Co. v. United States*, 996 F.2d 1177, 1184 (Fed. Cir. 1993) (holding that the Equal Access to Justice Act "strips the Government of its immunity with respect to costs and fees and requires it to litigate under the same professional standards applicable to a private litigant.").

unreasonably incomplete responses to all other Requests, as well as its unjustified delay of the discovery process generally.

Third, Defendant cannot justify, and has not even tried to justify, its piece meal production, nor has Defendant made a proper and fulsome response with respect to other unobjected to Requests. And Defendant's continued partial objections to Requests 6 and 7 are not substantially justified. "The burden is on the party facing sanctions to prove its violation was substantially justified." *Council for Tribal Emp't Rights v. United States,* 110 Fed. Cl. 244, 249 (2013) (internal citations omitted). Defendant cannot meet its burden here.

## III. CONCLUSION

Defendant has not only deliberately slow-rolled the document production process but has also haphazardly and casually stalled in providing any documents at the outset, and the documents produced thus far are both incomplete and inadequate. In addition, Plaintiff's requests for information in response to Requests 6 and 7 are clearly relevant to Plaintiff's claims. Thus, the Court should order Defendant to properly and timely produce all requested documents as set forth herein. Further, because Defendant's basis for withholding requested documents and necessitating this motion have no factual or legal support and, therefore, is not substantially justified, Plaintiff requests the Court to award it its expenses, including attorneys' fees, in pursuing its efforts and in connection with this motion.

Dated: December 8, 2020

Respectfully submitted,

s/ Kenneth A. Martin
MARTIN LAW FIRM
6718 Whittier Avenue, Suite 200
Mclean, VA 22101
Telephone (703) 918-0350
Ken@martin-lawfirm.com

*Counsel for THE CENTECH GROUP, Inc.*

James C. Fontana
L. James D'Agostino
Jeffry R. Cook
DEMPSEY FONTANA PLLC
8133 Leesburg Pike, Suite 500
Vienna, VA 22183
(703) 880-9172
jfontana@deftlaw.com
jcook@deftlaw.com
jdagostino@deftlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that I, Kenneth Martin, caused a copy of the foregoing Plaintiff's Motion to Compel and For Payment of Expenses to be filed electronically on December 8, 2020. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic case filing ("ECF") system and that the parties may access this filing through the Court's ECF system.

s/ Kenneth A. Martin
Kenneth A. Martin, Esq.
MARTIN LAW Firm
6718 Whittier Ave., Suite 200
McLean, VA 22101
(703) 918-0350
Ken@martin-lawfirm.com